# RELEASE AND SETTLEMENT AGREEMENT

1. **PARTIES.** This Release and Settlement Agreement ("Agreement") is made by and between Anna Korshunova and Dmytro Pershyn, individually and on behalf of and for the benefit of their present and former family members, heirs, successors or assigns, and/or any person acting on their behalf (collectively referred to as "Employees" or "Plaintiffs"), Haven Care for the Elderly, LLC, individually and on behalf of and for the benefit of its successors, assigns, present and former parent companies, affiliates, subsidiaries, employees, officers, directors, members, principals, insurers, attorneys, agents and/or anyone acting on its behalf ("Haven Care") and Lidiya Tereschenko, individually and on behalf of and for the benefit of her present and former family members, heirs, successors or assigns, and/or any person acting on her behalf ("Ms. Tereschenko") (Haven Care and Ms. Tereschenko are collectively referred to as the **"Employer"**) (Employees and the Employer are collectively referred to herein as the **"Parties."**) The Effective Date of this Agreement shall be the date it is signed by Plaintiffs.

2. **PARTICULARS.**

    WHEREAS, Employees, who are former employees of Employer, filed a complaint in the United States District Court, District of Connecticut, entitled, *Anna Korshunova, et al v. Haven Care for the Elderly, LLC et al*, Case No. 3:17-cv-01901--AWT (the "Complaint");

    WHEREAS, the Parties engaged in settlement negotiations through their respective attorneys with the assistance of Magistrate Judge Sarah A. L. Merriam;

    WHEREAS, the Employer denies any wrongdoing or liability in connection with the Complaint and alleges that their actions were, at all times, appropriate, lawful and in good faith; and

    WHEREAS, the Parties agree that it is in their best interests to avoid the costs and uncertainty involved in litigation and to resolve any and all claims and disputes between them arising out of the facts, events or conduct leading up to or related in any way to the Complaint, on the terms and conditions set forth below;

    NOW THEREFORE, in exchange for and in consideration of the mutual promises and covenants contained herein, along with other good and valuable consideration, the Parties hereby agree as follows.

3. **NON-ADMISSION.** This Agreement is for the purpose of avoiding controversy and litigation between the Parties, and does not constitute an admission by Employer that any action taken with respect to Employees' employment was improper, unlawful, or wrongful or in violation of any applicable law, regulation, policy, or contract, any such allegations being expressly denied by Employer.

4. **NO REEMPLOYMENT.** Employees agree that they will not seek reemployment with Haven Care or Lidiya Tereschenko at any time in the future. Employees further agree that should they seek reemployment or apply for future employment in violation of the terms of this paragraph, Haven Care or Lidiya Tereschenko shall incur no liability of any kind or nature by virtue of refusing to hire or rehire Employees or to consider employees for employment.

5. **CONSIDERATION.**

   a. In consideration of all the terms, conditions and undertakings by Employer, Employees agree to the following terms and conditions:

   1. Employees release Employer from all claims and charges as set forth below in Paragraphs 6 and 7 of this Agreement.

   2. Within three (3) business days after the payments set forth in Paragraph 5b below are made, Employees shall file a Stipulation of Dismissal With Prejudice.

   b. In consideration of all the terms, conditions and undertakings by Employees, Employer agrees to the following terms and conditions:

   1. Employer agrees to pay Employees the aggregate sum of ONE HUNDRED TWENTY-SEVEN THOUSAND AND FIVE HUNDRED DOLLARS ($127,500.00), as follows:

      (i) Employer will pay this aggregate amount, which will be held in escrow pending the approval of the settlement and the execution of this Release and Settlement Agreement, to Employees by January 31, 2019.

      (ii) Employer will issue payment to Ms. Korshunova in the gross amount of Twenty-Five Thousand Dollars ($25,000.00) less all required federal, state and other employment related taxes and deductions, for settlement of her wage claims for the period from March 21, 2015 to August 25, 2017, which Employer denies, and such amount will be reported on an IRS Form W-2 issued to Ms. Korshunova. The deductions will be made on the basis of a "miscellaneous" payroll period of 365 days. As to this payment, Ms. Korshunova will provide state and federal Forms W-4 to Employer's attorney.

      (iii) Employer will issue payment to Ms. Korshunova in the aggregate amount of Twenty-Five Thousand Dollars ($25,000.00) for Ms. Korshunova's claims for non-wage liquidated damages, which Employer denies, and such amount will be reported on an IRS Miscellaneous Income Form 1099 issued to Ms. Korshunova checking Box 3 "Other." As to this payment, Ms. Korshunova will

        provide a Form W-9 to Employer's attorney.

    (iv)    Employer will issue payment to Mr. Pershyn in the gross amount of Six Thousand Nine Hundred Thirty-Four Dollars and Fifty-Two Cents ($6,934.52), less all required federal, state and other employment-related taxes and deductions, for settlement of his wage claims, which Employer denies, and such amount will be reported on an IRS Form W-2 issued to Mr. Pershyn. The deductions will be made on the basis of a "miscellaneous" payroll period of 365 days. As to this payment, Mr. Pershyn will provide state and federal Forms W-4 to Employer's attorney.

    (v)    Employer will issue payment to Mr. Pershyn in the aggregate amount of Six Thousand Nine Hundred Thirty-Four Dollars and Fifty-Two Cents ($6,934.52) for Mr. Pershyn's claims for non-wage liquidated damages, which Employer denies, and such amount will be reported on an IRS Miscellaneous Income Form 1099 issued to Mr. Pershyn checking Box 3 "Other." As to this payment, Mr. Pershyn will provide a Form W-9 to Employer's attorney.

    (vi)    Employer will issue payment to Mr. Pershyn in the aggregate amount of Thirty-One Thousand One Hundred Thirty Dollars and Ninety-Six Cents ($31,130.96) to reimburse him for the automobile expenses incurred between January 23, 2015 and July 14, 2016, when Mr. Pershyn drove approximately 68,376 miles in the service of Employer but received only around $7,315.00 for automobile expenses. This reimbursement will not be treated as income to Mr. Pershyn.

    (vii)    Employer will issue payment to Zipin, Amster & Greenberg, LLC, 8757 Georgia Avenue, Suite 400, Silver Spring, Maryland 20910 in the amount of Thirty-Two Thousand Five Hundred Dollars ($32,500.00), for Plaintiffs' claims for attorney's fees and costs, which Employer denies, and such amount will be reported on an IRS Form 1099 issued to Plaintiffs' counsel. As to this payment, Zipin, Amster & Greenberg, LLC will provide a Form W-9 to Employer's counsel.

    (viii)    The payment described hereinabove shall be the complete, total and only financial payments to Plaintiffs and/or any counsel for them under this Agreement.

6.    **RELEASE OF CLAIMS**. In exchange for the consideration set forth in Paragraph 5, Plaintiffs release, waive, surrender, and discharge Employer from any and all manner of action and actions, cause and causes of action, suits, debts, accounts, promises, warranties, damages, attorneys' fees, claims and demands, liabilities of every kind and

character, direct and indirect, known and unknown, of whatever kind or nature, in law or in equity, arising under Parts I and II of Title 31, Chapter 558 of the Connecticut General Statutes titled "Wages", Conn. Gen. Stat. § 31-58 *et seq.* and Conn. Gen. Stat. § 31-70 *et seq.;* the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.;* and any other state and federal wage and hour laws; that Plaintiffs now have, claim to have, may have, or have at any time had or claimed to have had against Employer from the beginning of the world to the Effective Date, including but not limited to the claims raised in the Complaint or that could have been raised in the Complaint based on the facts alleged in the Complaint. Plaintiffs hereby acknowledge that all such claims that they now have, could have or claim to have against Employer from the beginning of the world up to the Effective Date are fully and completely released and discharged.

Plaintiffs are aware that they may discover claims or facts in addition to or different from those known or believed to be true with respect to the matters related herein. Nevertheless, it is Plaintiffs' intention to fully, finally, and forever settle and release all such matters, and all claims related thereto, which now exist, may exist, or heretofore have existed between Plaintiffs and Employer, whether suspected or unsuspected. In furtherance of such intention, this Agreement shall be and remain in effect as a full and complete release of all such matters, notwithstanding the discovery or existence of any additional or different claims or facts relative thereto.

Plaintiffs further acknowledge that by signing this Agreement they are giving up any right to become, and are promising not to consent to become, members of any class in a case in which any wage and hour claims are asserted against Employer that involve events that occurred prior to the date Plaintiffs signs this Agreement. If Plaintffs, without their prior knowledge and consent, are made members of a class in any such proceeding, Plaintiffs will opt out of the class at the first opportunity afforded to them after learning of their inclusion. In this regard, Plaintiffs will execute, without objection or delay, an "opt-out" form presented to Plaintiffs either by the court in which such proceeding is pending or by counsel for the Employer made a defendant in any such proceeding. If any claim is filed on Plaintiffs' behalf by any state or federal Department of Labor against Employer, Plaintiffs agree that the funds paid to them under this Agreement shall be considered a set-off against any amount awarded on account of that claim and that any amount awarded shall therefore be reduced by same.

7. **REPRESENTATIONS REGARDING RELEASE OF CLAIMS.** Employees represent that, other than the Complaint that they are now dismissing with prejudice and releasing all claims arising out of their employment and the allegations contained in their Complaint, and Anna Korshunova's pending Workers' Compensation claims (WCC File Nos. 400106657 and 400106144), they have no other pending claim or claims against the Employer, have not filed a complaint, charge or claim with any court, agency or other tribunal against the Employer, have no or pending work-related injury, have not brought any claim for workers compensation, and have not assigned any claim against the Employer to any person or entity. Moreover, to confirm the Parties' mutual understanding and intentions with respect to the release set forth in this Agreement, the Employees specifically acknowledge and agree as follows:

a. This Agreement is intended to be a release that permanently extinguishes all of the Employees' claims against Employer arising out of the allegations asserted in the Complaint to the fullest extent permitted by law;

b.  Employees agree that they will not institute a claim of any kind against Employer for the claims now released; and

c.  Employees are waiving and giving up all claims that they have or may have to obtain any monetary recovery or equitable relief from Employer including, but not limited to, back pay, front pay, interest, attorney's fees and costs, liquidated damages, contract damages, punitive, compensatory, or consequential damages, and any other form of monetary or nonmonetary relief under any theory of law or liability whatsoever arising out the allegations asserted in the Complaint.

8.  **DAMAGES FOR BREACH.** If any Employee breaches any provision of this Agreement, Employer may seek injunctive relief from a court ordering Employee to cease violating her obligations and pay monetary damages to Employer. The breaching Employee(s) agrees to indemnify Employer for any costs, expenses (including attorneys' fees) or damages incurred by Employer due to her breach. An Employee's breach of any provision of this Agreement shall not operate to invalidate or render unenforceable any other provision of this Agreement. If Employer breaches any provision of this Agreement, Employee(s) may seek injunctive relief from a court ordering Employer to cease violating its obligations and pay monetary damages to Employee(s). Employer agrees to indemnify Employee(s) for any costs, expenses (including attorneys' fees) or damages incurred by Employee(s) due to the breach.

9.  **NON-ASSIGNMENT.** Employees warrant and represent that they have not heretofore assigned or transferred or attempted to assign or transfer to any person or entity, any claim or matter recited in this Agreement or any part or portion thereof, and they agree to indemnify and hold harmless Employer from and against any claim, demand, damage, debt, liability, account, reckoning, obligation, cost, expense (including the payment of attorney's fees and costs actually incurred whether or not litigation is commenced), lien, action, and cause of action, based on, in connection with, or arising out of such assignment or transfer or attempted assignment or transfer.

10. **GOVERNING LAW.** This Agreement shall be deemed to be made and entered into in the State of Connecticut, and shall in all respects be interpreted, enforced and governed under the laws of Connecticut, without regard to conflict of law principles. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties. The headings and captions of this Agreement are provided for convenience only and are intended to have no effect in construing or interpreting this Agreement.

12. **NON-DISPARAGEMENT.** The Parties agree that they will not publicly disparage each other, or any of them. "Disparage" shall mean, for purposes of this covenant, to make, without privilege, remarks or statements that are defamatory, critical, and untrue, or to induce others to make such remarks or statements.

13. **TAXES.** Both parties are responsible for any respective tax liabilities relating to the payments made pursuant to this Agreement and neither will look to the other for any

indemnification of any tax liability.

14. **SEVERABILITY.** If, in the future, it is determined by a court of competent jurisdiction that any covenant, clause, provision or term herein is illegal, invalid or unenforceable, the remaining provisions and terms of this Agreement shall not be affected thereby and the illegal, invalid or unenforceable term or provision shall be amended by the court to reflect the Parties' intent, if possible. If such an amendment is not possible, the illegal, invalid or unenforceable term or provision shall be severed from the remainder of this Agreement. In the event of such severance, the remaining covenants of this Agreement shall continue to be binding and enforceable to the extent permitted by law.

15. **MODIFICATION OF AGREEMENT.** This Agreement may be amended, revoked, changed or modified only upon a written agreement executed by all Parties hereto. No waiver of any provision of this Agreement will be valid unless it is in writing and signed by the party against whom such waiver is charged.

16. **ENTIRE AGREEMENT.** This Agreement constitutes the full and complete understanding between Employees and Employer concerning its subject matter, and supersedes any and all prior agreements or understandings with respect to its subject matter. Employees have signed this Agreement of their own free will, and in exchange for consideration to them which he acknowledge is adequate and satisfactory.

17. **EXECUTION.** This Agreement may be executed in one or more counterparts, each of which when so executed shall be deemed to be an original, and all such counterparts together shall constitute but one and the same instrument.

## ACKNOWLEDGEMENT

By signing below, Employees acknowledge that they carefully read and understand the terms of this Agreement, had the opportunity to consult with an attorney of their choosing regarding the implications of this Agreement, received all the advice they deem necessary concerning this Agreement, fully understand what this Agreement means, and choose to enter into this Agreement freely, knowingly, and voluntarily without any undue duress and that no other promises or agreements have been made to them other than those set forth in this Agreement.

**IN WITNESS** WHEREOF, the Parties affix their signatures hereto:

**ANNA KORSHUNOVA**

01/7/19
Date

By _____
Anna Korshunova

Personally appeared Anna Korshunova, signed and sealer of the foregoing instrument, and acknowledged the same to be her free act and deed before me on this 7th day of Jan, 2019.

_____
Notary Public/Commissioner of the Superior Court

**DMYTRO PERSHYN**

01/07/19
Date

By _____
Dmytro Pershyn

Personally appeared Dmytro Pershyn, signed and sealer of the foregoing instrument, and acknowledged the same to be her free act and deed before me on this 7th day of Jan, 2019.

_____
Notary Public/Commissioner of the Superior Court

HAVEN CARE FOR THE ELDERLY, LLC

12.28.2018                             By _____
Date                                          Lidiya Tereschenko
                                              Owner

Personally appeared Lidiya Tereschenko, owner of Haven Care for the Elderly, LLC, signed and sealer of the foregoing instrument, and acknowledged the same to be her free act and deed before me on this 28 day of December, 2018.

_____
Notary Public/Commissioner of the
Superior Court


LIDIYA TERESCHENKO

12.28.18                               By _____
Date                                          Lidiya Tereschenko

Personally appeared Lidiya Tereschenko, signed and sealer of the foregoing instrument, and acknowledged the same to be her free act and deed before me on this 28 day of December, 2018.

_____
Notary Public/Commissioner of the
Superior Court